**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
(609) 989-2182

| | |
|---|---|
| CHAMBERS OF<br>FREDA L. WOLFSON<br>CHIEF JUDGE | Clarkson S. Fisher Federal<br>Building & U.S. Courthouse<br>402 East State Street<br>Trenton, New Jersey 08608 |

**LETTER ORDER**

October 27, 2022

Lawrence C. Hersh, Esq.
17 Sylvan St., Suite 102B
Rutherford, NJ 07070

Sean Michael O'Brien, Esq.
Lippes Mathias LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202

      **RE:** ***Pistone v. Sequium Asset Solutions, LLC***
             **No. 21-07465 (FLW)**

Counsel:

      On March 30, 2021, Plaintiff Renee Pistone ("Plaintiff" or "Pistone") filed a Complaint on behalf of herself and those similarly situated, against Sequium Asset Solutions, LLC ("Defendant" or "Sequium"). (ECF No. 1.) Pistone alleges that Defendant violated sections 1692e, 1692f, and 1692g of the Fair Debt Collection Practices Act ("FDCPA") by mailing a collection letter that (1) overshadowed her rights in violation of section 1692g(b); (2) was misleading such that a consumer would believe that any written dispute must be made via website instead of in writing in violation of sections 1692e, e(10), and f; and (3) is unclear as to the identity of the owner of the debt in violation of section 1692g(a). Pending before the Court is Defendant's motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). However, as a threshold matter, I directed the parties to submit supplemental briefing addressing Article III standing in light of the Supreme Court's decision in *TransUnion LLC v. Ramirez*,__U.S.__,141 S. Ct. 2190 (2021). Plaintiff did not submit supplemental briefing in response to the Court's Order. Defendant submitted briefing arguing that Plaintiff lacks standing to bring her claims. In lieu of a formal Opinion, the Court renders its decision on standing in this Letter Order. The Court finds that Plaintiff does not have Article III standing to bring her §§ 1692e, 1692f, and 1692g claims.

At any time during the pendency of a lawsuit, courts have an independent obligation to determine whether subject matter jurisdiction exists. *See Ballentine v. United States*, 486 F. 3d 806, 810 (3d Cir. 2007).[1] Article III of the U.S. Constitution limits the judicial power of federal courts to deciding "cases" or "controversies." § 2. This limitation serves the purpose of "prevent[ing] the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty*, 568 U.S. 398, 408 (2013) (citations omitted).

The doctrine of standing to sue is "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To satisfy Article III's standing requirements, the Supreme Court has established that a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Absent standing, there is no case or controversy, and a federal court cannot exercise subject-matter jurisdiction over the plaintiff's claims. Courts have an independent obligation to assess whether standing exists. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12 (h)(3); *see also Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (A court "can dismiss a suit *sua sponte* for lack of subject jurisdiction at any stage in the proceeding.").

In *Spokeo*, the Supreme Court explained that concrete injuries may be both tangible and intangible, and "[i]n determining whether an intangible harm constitutes injury in fact, both history and Congress play important roles." 578 U.S. at 340. To that end, the Supreme Court instructed courts to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 341. (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)). In so doing, courts could ensure that the harm alleged in cases of statutory violations is more than just a "bare procedural violation." *Id*. *Spokeo* left open the possibility that the mere "risk of harm" could satisfy the concreteness requirement. *Id*. The Supreme Court's recent ruling in *TransUnion*, however, clarified that material risk of future harm can only serve as a basis for standing as a concrete harm in suits where a plaintiff pursues injunctive relief to prevent the harm from occurring. 141 S. Ct. at 2210. In contrast to generally inadequate "risk of harm," the Court explained that a concrete injury requires actual "downstream consequences" or "adverse effects." *Id*.; *see also Schultz v. Midland Credit Mgmt., Inc.*, No. 16-4415, 2022 WL 3013082, at *4 (D.N.J. July 29, 2022) (explaining that to establish standing post-*TransUnion*, plaintiffs must show evidence that bears a close relationship to the elements of the common-law analogue, such

---

[1] Standing must be met and persist throughout all stages of litigation. *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013). A district court's obligation to assess standing continues throughout a case, because "[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

2

as reliance under fraud, and "harmful downstream effects") (citing *Thome v. Sayer Law Group., P.C.*, 567 F. Supp. 3d 1057, 1071–74 (N.D. Iowa 2021)); *Sandoval v. Midland Funding, LLC*, No. 1809396, 2022 WL 2116769, at *4 (D.N.J. June 13, 2022) (finding no standing where plaintiffs asserted only an alleged statutory violation that resulted in no "downstream consequences" or "adverse effects" caused by the violation). Moreover, the Supreme Court made clear that *Spokeo* "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." 141 S. Ct. at 2205 (internal quotations omitted).

Here, Plaintiff alleges that she received a collection letter dated, March 30, 2020, from Defendant for a debt in the amount of $463.08 owed to creditor, First Savings Bank ("FSB"). (Compl., ¶¶ 14, 21, 23.) With respect to Plaintiff's debt validation rights, the bottom of the letter states the following:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, the office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different than the current creditor.

(Debt Collection Letter, dated March 30, 2020.) Plaintiff avers that Defendant's "request for payment within the '30 day dispute period' without explaining that its demand did not override the consumer's right to dispute[] rendered the validation notice ineffective" in violation of 1692g(b). (Compl., ¶ 35.) Next, Plaintiff claims that the letter's statement that "[y]ou can contact us at the phone number listed above or you can communicate with us about your account at www.sequium.com," is misleading as it could lead the least sophisticated consumer to believe that any written dispute or request for validation of the debt under section 1692g(a) must be made via website and cannot be made by mail. (*Id.*, ¶¶ 36, 40.) To that end, Plaintiff alleges that the least sophisticated consumer may not know how to access Defendant's website, and as a result, would be dissuaded from seeking debt validation. (*Id.*, ¶¶ 41, 43.) Further, Plaintiff complains that the collection letter fails to identify the original creditor such that the least sophisticated consumer could believe that Defendant is the current owner of the debt. (*Id.*, ¶¶ 48, 50.) These allegations, however, do not constitute a concrete harm sufficient to confer standing in the wake of *TransUnion*.

This Court's recent decision in *Madlinger v. Enhanced Recovery Co., LLC*, No. 21-00154, 2022 WL 2442430, at *3 (D.N.J. July 5, 2022) is instructive in the instant action. There, the plaintiff, Patricia Madlinger ("Madlinger"), alleged concrete harm under two distinct theories: confusion and third-party disclosure. As to confusion, Madlinger alleged that the defendant had violated sections 1692e and 1692g of the FDCPA by sending out an allegedly misleading debt collection letter. Section 1692e generally prohibits the use of "any false, deceptive, or misleading

3

representation or means in connection with the collection of any debt." Section 1692g specifies the required contents in a written notice of debt and describes the process by which debts are to be disputed. In particular, Madlinger alleged that the least sophisticated consumer would be confused as to where to send a debt verification request given the inclusion of multiple addresses in a debt collection letter such that he or she could believe that none of the addresses in the letter was the correct address to dispute a debt. *Id*. at *5. In the context of standing, confusion, when accompanied by detrimental action or inaction, can have a sufficiently close relationship to the traditional harm of common-law fraud. *Id*. To prove fraudulent misrepresentation, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Bulboff v. King Aircraft Title, Inc.*, No. 19-18236, 2021 WL 1186822, at *7 (D.N.J. Mar. 30, 2021). In similar fashion, negligent misrepresentation claims require a showing of harm "caused to [plaintiffs] by their justifiable reliance upon" the false information. Restatement (Second) of Torts, § 552(1) (1977). Although I observed that courts have recognized that misleading communications may give rise to concrete harm for Article III standing, I found that Madlinger failed to allege reliance. *Id*. at *6. Importantly, Madlinger had not alleged that she had relied on the multiple addresses in the letter in making any decision to verify or dispute the debt. As such, Madlinger's general allegations of misleading debt communications in violation of §§ 1692e(10), (g) and g(b) were inadequate to confer Article III standing.

Here, similar to the *Madlinger* plaintiff, Pistone's allegations in her Complaint do not amount to concrete harm sufficient to establish Article III standing under the rubric set forth in *Spokeo* and clarified in *TransUnion*. However, unlike the *Madlinger* plaintiff, Pistone does not even allege a single harm as a result of Defendant's alleged conduct. Rather, Plaintiff merely alleges that she "suffered injury in fact by being subjected to unfair and abusive practices by defendant," and "suffered actual harm by being the target of Defendant's misleading debt communications." (Compl. ¶¶ 51-52.) Even accepting these allegations as true, they are conclusory and amount to no more than general allegations of informational injury. Such allegations, alone, are insufficient to confer Article III standing. *See TransUnion*, 141 S. Ct. at 2214 ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (citation omitted)).

"Adequacy of informational harms for standing purposes [] turns on a plaintiff's consequential action or inaction following receipt of a misleading or deceptive collection letter." *Huber v. Simon's* Agency, Inc., No. 19-01424, 2022 WL 1801497, at *4 (E.D. Pa. June 2, 2022). In the instant case, Plaintiff does not allege any form of reliance on the alleged misleading communication, let alone detrimental reliance. *See Kola v. Forster & Garbus LLP*, No. 19-10496, 2021 WL 4135153, at *4 (S.D.N.Y Sept. 10, 2021) ("[M]erely receiving a letter from a debt collector that was confusing or misleading as to the amount owed does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance."); *see also Ward v. Natl. Patient Account Services Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021). In addition, although it appears that Plaintiff has hired an attorney to represent her in this matter, consulting a lawyer in and of itself is insufficient to meet Article III's injury-in-fact requirement. *See e.g., Deiker v. TrueAccord Corp.*, No. 20-00669, 2021 WL 4502138, at *3 (N.D. Ill. Sept. 30, 2021) ("even if a debt communication violates the FDCPA in some way, consulting

an attorney does not in and of itself establish an injury-in-fact without further allegations of concrete harm"); *Cavazzini v. MRS Assocs.*, No. 21-5087, 2021 WL 5770273, at *7 (E.D.N.Y. Dec. 6, 2021) ("[H]iring an attorney [] does not support standing because the burdens of bringing a lawsuit cannot be the sole basis for standing."). Importantly, although Plaintiff alleges that the letter would lead the least sophisticated consumer to believe that any written dispute or request for validation under 1692g(a) must be made via the website instead of by mail, Plaintiff does not allege that the letter dissuaded her from disputing or otherwise seeking a validation of her debt because of the alleged misleading language. What is more, Plaintiff does not claim that the letter's failure to identify the owner of the debt caused her to alter her course of action in responding to the debt collection letter in any fashion.

Absent allegations of any concrete harm, Plaintiff is asserting merely statutory violations that lack standing under *TransUnion*. Thus, this Court concludes that Plaintiff has no standing to assert her section 1692e, 1692f, and 1692g claims. Accordingly, this Court lacks subject matter jurisdiction over the instant action. Because Plaintiff was already provided with an opportunity to submit supplemental briefing analyzing whether she had Article III standing to bring each of her claims, and chose not to do so, Plaintiff's claims are dismissed without prejudice for lack of subject matter jurisdiction. This matter is **CLOSED**.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge